IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PATRICIA A. DAVIDSON, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:24-CV-1172-P |
| | § | |
| EQUIFAX INFORMATION SERVICES LLC | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE REGARDING DEFENDANT
EQUIFAX INFORMATION SERVICES LLC'S AMENDED MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Plaintiff Patricia A. Davidson ("Davidson"), proceeding *pro se*, originally filed this action on December 2, 2024, against Texan Credit Corporation ("Texan Credit") and Defendant Equifax Information Services LLC ("Equifax" or "Defendant") [doc. 1]. On December 30, 2024, Davidson filed an Amended Complaint [doc. 15], and, on January 13, 2025, Texan Credit filed a Motion to Dismiss [doc. 21]. Thereafter, on April 28, 2025, the undersigned recommended that all of Davidson's claims in her Amended Complaint against Texan be dismissed [doc. 36]. As to her claims against Texan Credit pursuant to the Fair Credit Reporting Act ("FCRA"), the undersigned found and concluded that "Davidson ha[d] not alleged an 'inaccurate' credit entry as required to state a claim under the FCRA." (Court's April 28, 2025 Findings, Conclusions, and Recommendation ("Court's April 28, 2025 FCR") at 11.) The Court, in an order dated June 9,

1

2025 [doc. 55] ("Court's June 9, 2025 Order"), accepted the undersigned's April 28, 2025 FCR, overruled all of Davidson's objections, dismissed Texan Credit from the case, and ordered "Plaintiff [to] file an Amended Complaint reflecting [Texan Credit's] termination from this case." (Court's June 9, 2025 Order at 5.)

Thereafter, on June 12, 2025, Davidson filed a Second Amended Complaint [doc. 56], which is the live pleading before this Court. In the Second Amended Complaint, Davidson alleges the following two claims under the FCRA against Equifax, which is a consumer reporting agency ("CRA"):[1] (1) violation of 15 U.S.C. § 1681e(b) for failing "to follow reasonable procedures to ensure the maximum possible accuracy of the information it included in Plaintiff's credit report" and (2) violation of 15 U.S.C. § 1681i for failing "to conduct a reasonable reinvestigation after Plaintiff disputed the inaccurate reporting of her account."[2] (Plaintiff's Second Amended Complaint ("Pl.'s Sec. Am. Compl.") at 1, 7-8.)

On June 13, 2025, Equifax filed an Amended Motion to Dismiss Plaintiff's Second Amended Complaint ("Amended Motion to Dismiss") [doc. 59], which is currently pending before the Court. In the motion, Equifax requests that the Court (1) "not consider the portions of Plaintiff's Second Amended Complaint containing New Allegations[3] against Equifax, which far

---

[1] Under the FCRA, a CRA is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

[2] According to Plaintiff, she disputed the information reported by Equifax relating to her account with Texan Credit on three separate occasions. (Pl.'s Sec. Am. Compl. at 3-8.) The first time was on or about March 20, 2024, when Plaintiff "mailed a formal written dispute to Equifax regarding the Texan Credit . . . tradeline." (*Id*. at 3.) The second time was on or about October 18, 2024, when Davidson submitted a complaint with the Consumer Financial Protection Bureau ("CFPB"). (Pl.'s Sec. Am. Compl. at 4 (Davidson states that she submitted the CFPB complaint on October 18, 2025. However, the Court assumes this is a typographical error based on the information contained in (Plaintiff's Appendix in Support of Response ("Pl.'s App."), Exhibit ("Ex.") D.).) The third time was on or about January 14, 2025, when Plaintiff "submitted a third formal dispute directly through the Equifax online portal." (Pl.'s Sec. Am. Compl. at 6.)

[3] As to the "New Allegations," Defendant states:

exceed the scope of the Court's [June 9, 2025] Order" allowing Plaintiff to file a Second Amended Complaint, and (2) "dismiss Plaintiff's claims in its entirety" as, based on the Court's April 28, 2025 FCR, there is no inaccuracy, even if considering the New Allegations, upon which Plaintiff's claims against Equifax can stand. (Def.'s Br. at 2-3 (footnote added).) In her response, Davidson argues, *inter alia*, that she properly filed her Second Amended Complaint and "based her allegations on the same pattern of misconduct that has persisted throughout this litigation." (Plaintiff's Brief in Support to Defendant Equifax Information Services Amended Motion to Dismiss ("Pl.'s Br.") at 4.) In addition, Plaintiff states:

> Equifax correctly quotes *McDonald v. Equifax Inc No. 3:15-cv-3212-B, 2017 WL 879224* which requires a factual inaccuracy under 1681e(b) and 1681i. However, Plaintiff's allegations not only meet that standard, they also demonstrate a pattern of willful noncompliance with the FCRA. Equifax stated the balance from the Furnisher Texan Credit was reporting a 0$ balance, only to reinsert it without proper notification or certification under 1681i(a)(5)(B). After, plaintiff triggered two prior disputes, and after the account had entered litigation with a much higher balance, Equifax willfully ignored the plaintiff's third reinvestigation, failed to include her legal authorized consumer statement under 1681i(c), and continued reporting a tradeline[4] with clearly inconsistent and inaccurate delinquency dates, with a much higher balance.

(Pl.'s Br. at 9 (mistakes in original) (footnote added).)

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) is generally viewed with disfavor. *See Lowrey v. Texas A&M Univ. Sys.*, 117

---

In the Second Amended Complaint, Plaintiff maintains her claim that Equifax reported an inaccurate balance, but now also alleges that Equifax inaccurately reported the Account as 60-90 days late, an inaccurate date of first delinquency, and that Equifax failed to add a consumer statement that [sic] her Account post-litigation (collectively, the "New Allegations").

(Defendant's Brief in Support of Amended Motion to Dismiss ("Def.'s Br.") at 2.)

[4] A "trade line" is credit information that credit grantors report to CRAs and consists "of credit account information such as account number, account status, and payment history." *Thomas v. NCO Fin. Sys., Inc.,* No. 2:04-2347, 2012 WL 13081058, at *1 (W.D. La. Mar. 19, 2012).

3

F.3d 242, 247 (5th Cir. 1997). To defeat a motion to dismiss filed pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008) (internal quotation marks and citations omitted); *see Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim satisfies the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 545. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *See Iqbal*, 556 U.S. at 679.

When ruling on a 12(b)(6) motion to dismiss, the court must accept all well-pled facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). While well-pled facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Additionally, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). Finally, although "*pro se* complaints are held to less stringent

4

standards than formal pleadings drafted by lawyers," *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981), the pleadings must still show specific, well-pled facts, "not mere conclusory allegations" to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)).

In rendering a decision on a 12(b)(6) motion, the court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Additionally, the court may consider "' [d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Furthermore, a court may "take judicial notice of matter of public record" and "is entitled to consider its own prior rulings . . . that are relevant to the lawsuit" in ruling on a motion to dismiss. *Hill v. Estate of Hill*, 594 F. Supp. 3d 741, 759 (N.D. Tex. Mar. 25, 2022).

### III.   ANALYSIS

As set forth above, Equifax, in its Amended Motion to Dismiss, first asks the Court to "not consider the portions of Plaintiff's Second Amended Complaint containing New Allegations against Equifax" as such portions "far exceed the scope of the Court's [June 9, 2025] Order." (Def.'s Br. at 2.) The Court finds and concludes that such request should be denied because the Court's June 9, 2025 Order did not set limits for what claims Plaintiff could include against Equifax but merely directed Plaintiff to file an amended complaint that "reflect[ed Texan Credit's] termination from this case." (Court's June 9, 2025 Order at 5.)

The next issue is whether the Court should dismiss Davidson's claims under the FCRA against Equifax. As stated above, Davidson, in her Second Amended Complaint, alleges claims against Equifax for violating two sections of the FCRA. (Pl.'s Sec. Am. Compl. at 7-8.)  First,

Davidson alleges that Equifax, as a CRA, violated 15 U.S.C. § 1681e(b) of the FCRA by failing "to follow reasonable procedures to ensure the maximum possible accuracy of the information it included in Plaintiff['s] credit report." (Pl.'s Sec. Am. Compl. at 7.) Next, Davidson alleges that Equifax violated 15 U.S.C. § 1681i of the FCRA by failing "to conduct a reasonable reinvestigation after Plaintiff disputed the inaccurate reporting of her account." (*Id*. at 8; *see also* 15 U.S.C. §§ 1681i(a)(1), (5)).

"Generally, the FCRA provides a private right of action for willful or negligent noncompliance against [CRAs]." *Coleman v. Devos*, No. 3:19-CV-2417-D-BH, 2020 WL 9219408, at *3 (N.D. Tex. Dec. 28, 2020) (citing 15 U.S.C. §§ 1681n, 1681o). Section 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To recover on a Section 1681e(b) claim, a plaintiff must show that: (1) the CRA prepared a consumer report that contained inaccurate information; (2) the inaccuracy was due to the CRA's failure to follow reasonable procedures to assure the accuracy of its credit report; (3) the plaintiff was injured; and (4) the CRA's negligence proximately caused the plaintiff's injury. *See Grant v. RentGrow, Inc.*, No. SA-21-CV-1172-JKP, 2023 WL 5813140, at *5 (W.D. Tex. Sept. 6, 2023).

Section 1681i(a) provides that, if a consumer disputes the completeness or accuracy of any item in her file, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A). As relevant here, to asset a claim under Section 1681i(a), a plaintiff must establish the following: (1) Plaintiff disputed the accuracy of an in item in her credit file and notified the CRA directly of the dispute; (2) the CRA did not

6

reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by Section 1681i(a)(5) within the statutory period; (3) the CRA's noncompliance was negligent or willful; (4) Plaintiff suffered injury; and (5) Plaintiff's injury was caused by the CRA's failure to reinvestigate and record the current status of the disputed information or delete the item from the file. *See Beard v. Experian Info. Sols., Inc.*, No. 23-1306, 2023 WL 8827762, at *3 (E.D. La. Dec. 21, 2023); *Beard v. Equifax*, No. 23-1592, 2023 WL 10554729, at *3 (E.D. La. Dec. 20, 2023).

The threshold question under both Sections 1681e(b) and 1681i is whether plaintiff's consumer reports contained inaccurate information. *See Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 286 (5th Cir. 2025) ("We join the other circuits in concluding that inaccuracy is a threshold requirement for § 1681i claims."); *Warner v. Equifax Info. Servs. LLC*, No. 3:23-CV-1286-E, 2025 WL 714243, at *3 (N.D. Tex. Feb. 11, 2025) ("To prevail on a claim under either Section 1681e(b) or Section 1681i, [a plaintiff] must prove that [her] consumer reports included inaccurate information.") (internal quotation marks and citations omitted) (alterations in original)). "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998). "But the [FCRA] does not impose strict liability for inaccurate entries." *Id.* "Rather, the plaintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared." *Id.* at 896. "Mere precision does not render information inaccurate." *Toliver v. Experian Info. Sols., Inc* 973 F. Supp. 2d 707, 715 (S.D. Tex. 2013). "However, information, that is 'open to an interpretation that is directly contradictory to

7

the true information' is sufficiently misleading to qualify as inaccurate." *Id.* (quoting *Wagner v. TRW, Inc.*, No. 97-30601, 1998 WL 127812, at *1 (5th Cir. Mar. 4, 1998)).

In her Second Amended Complaint, Davidson alleges that Equifax continued reporting "the Texan Credit Corporation tradeline" even after Plaintiff disputed the debt on three occasions and Equifax conducted three reinvestigations. (Pl.'s Sec. Am. Compl. at 3-7.) After filing her second dispute with the CFPB[5] on October 18, 2024, Davidson claims that, on or about November 4, 2024, "Equifax notified Plaintiff that the reinvestigation was complete," stating, "'The Texan Credit Corporation account is reporting $0 balance and we hope this resolves your concerns.'" (Pl.'s Sec. Am. Compl. at 5.) Plaintiff claims this response was inaccurate, misleading, and, that "[d]espite the 0$ [sic] balance, the tradeline continued to report a balance, a payment made in March 2023, a 60-day delinquency in April 2023, and a 90-day delinquency in May 2023." (*Id.*)

Plaintiff further alleges that, "[o]n or about December 1, 2024, Equifax reported a balance of $1,682 for the Texan Credit tradeline, despite having previously closed Plaintiff['s] second dispute by claiming that the account had a $0 balance." (Pl.'s Sec. Am. Compl. at 5-6.) Plaintiff claims that, based on this continued misreporting, Plaintiff submitted a third formal dispute on January 14, 2025, "directly through the Equifax online portal." (*Id.* at 6.) Plaintiff then states:

> On or about January 26, 2025, Equifax completed its reinvestigation and issued the results of her third dispute. The response stated that "the Creditor/Agency has verified the information as correct." However, the tradeline continued to reflect

---

[5] The CFPB is "an independent agency that promulgates regulations governing the consumer credit market." *Saunders v. Equifax Info. Servs. LLC*, No. 16-CV-00525-LY, 2017 WL 3940942, at *5 (W.D. Tex. Aug. 3, 2017). The CFPB "regulates CRAs and enforces the FCRA." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 752 n.1 (9th Cir. 2018).

inaccurate and misleading information, in violation of 15 U.S.C. [§]§ 1681li and 1681e(b), including:

a. An incorrect first date of delinquency that still reported Payment made March 2023, 60 days delinquent April 2023, 90 days delinquent May 2023 in violation of 15 U.S.C. [§] 1681(a)(5)(A;

b. No indication that Plaintiff had submitted a dispute comment stating the account was in litigation which is a violation of 15 U.S.C. [§] 1681i(c) after Plaintiff specifically put it in her comment while filing her Third dispute[;]

c. An inflated balance in the amount of $1,714 which is substantial enough to negatively affect Plaintiff['s] debt-to-income (DTI) ration and could have led to adverse credit decision Despite knowing the tradeline was disputed.

(Pl.'s Sec. Am. Compl. at 6 (mistakes in original).)

Based on the foregoing, the threshold question is whether Plaintiff has alleged that her credit reported contained an inaccuracy. The Court, in its April 28, 2025 FCR on Texan Credit's motion to dismiss, found and concluded that, as to Texan Credit, who was the underlying creditor or furnisher of information to Equifax, "Davidson ha[d] not alleged an "inaccurate" credit entry as required to state a claim under the FCRA." (Court's April 28, 2025 FCR at 11.) In making this finding, the Court stated:

> As stated above, Davidson, in her Amended Complaint, alleges that her credit report had differing amounts listed as owed or "past due" to Texan Credit in amounts ranging from $1,015 to $1,525. (Pl.'s Am. Compl. at 6-13 and Exs. C, H.) However, Davidson, in her Amended Complaint, never denies that she owed Texan Credit money for failing to pay back a loan, never alleges that she made any payments, and never alleges how the amounts reported by Texan Credit on her credit report were inaccurate. In fact, Texan Credit attaches a copy of the Promissory Note to its Brief, which shows that, on February 17, 2023, Davidson borrowed $900 from Texan Credit and was to make ten payments of $135.00 to Texan Credit on the 17th of each month, beginning March 17, 2023. (Defendant's Br. at Ex. 1, p. 4.) According to the Promissory Note, the total amount Davidson was to have paid after she made all payments as scheduled was $1,350. (*Id*.) The Promissory Note also set forth additional provisions, fees, penalties, and interest rates for late payments. (*Id*.) A difference in reporting of, at the most, a few hundred dollars between the amount owed on a valid loan over a period of several months is certainly not patently incorrect or misleading in such a way that it can be expected to adversely affect a credit decision. Thus, the Court finds and concludes that Davidson has not alleged an "inaccurate" credit entry as required to state a

9

> claim under the FCRA. Consequently, the Court **FINDS and CONCLUDES** that Texan Credit's Motion to Dismiss on this claim should be **GRANTED**.

(Court's April 25, 2025 FCR at 10-11.)[6]

As the Court has already found and concluded that Davidson failed to allege an "inaccurate" credit entry as required to state a claim under the FCRA against Texan Credit, the same findings and conclusions apply to Equifax. Once again, Davidson never denies that she owes Texan Credit money for failing to pay back a loan. While Davidson claims in her Second Amended Complaint that it was incorrect for Equifax to report any balance owed or any payments or delinquencies on Plaintiff's debt to Texan Credit, the Court, as discussed below, finds and concludes that Davidson has not alleged any true inaccuracies.

As found in the Court's April 25, 2025 FCR, the promissory note between Davidson and Texan Credit shows that, on February 17, 2023, Davidson borrowed $900 from Texan Credit and was to make ten payments of $135.00 to Texan Credit on the 17th of each month, beginning March 17, 2023. (Court's April 25, 2025 FCR at 10.) Moreover, according to the Promissory Note, the total amount Davidson was to have paid after she made all payments as scheduled was $1,350 plus fees and penalties for late payments. (*Id.* at 10-11.) Thus, as accurately reported on the December 1, 2024 credit report (*see* Pl.'s Am. Compl. at 5), which was after Davidson filed her second dispute through the CFPB with Equifax and received the results, Davidson would have owed approximately $1,682[7] to Texan Credit. Moreover, as accurately reported on Davidson's January 26, 2025, credit report (*see* Pl.'s App., Ex. E), Davidson failed to make her first payment on the

---

[6] The Court incorporates its April 25, 2025 FCR as well as all relevant documents into this order.

[7] The Court notes that on or about April 9, 2024, eight months earlier and after Davidson had filed her first written dispute to Equifax, Texan Credit was reporting an amount past due of $1,525 on Davidson's credit report. (*See* Pl.'s App. at Ex. C.)

10

loan with Texan Credit in March 2023, was thirty to fifty-nine days delinquent in April 2023 (as the first payment was due on March 17, 2023), sixty to eighty-nine days delinquent in May 2023, and ninety to 119 days delinquent in June 2023. *See Irvin v. Equifax Info. Servs., LLC*, No. 4:19-cv-03688, 2020 WL 4547152, at *3 (S.D. Tex. Aug. 6, 2020) ("[H]istorical information about an account simply isn't misleading or patently incorrect where all information taken together establishes that an account is no longer active."). In addition, by January 26, 2025, an amount past due of $1,714 does not appear inflated as she owed $1,350 plus fees and penalties in 2023 for her failure to pay the original loan amount owed.

While not entirely clear, Davidson seems to be arguing, based on Equifax's response to her second reinvestigation request (that she made through the CFPB) that Texan Credit was currently reporting a $0 balance, subsequent entries on her credit report were inaccurate.[8] (Pl.'s Br. at 7-8.) In this response, dated November 30, 2024, CFPB reported that Equifax stated:

> Equifax has completed its investigation, including contacting the furnisher of the information, where applicable. A summary of the results are listed below: Trade: TCC FORT WORTH SOUTH WE UPDATED THE BALANCE OF THIS ACCOUNT. THE FOLLOWING FIELD HAVE BEEN MODIFIED: CLOSED DATE, SCHEDULED PAYMENT, PAST DUE, HIGH CREDIT, BALANCE, ADDITIONAL INFORMATION   Trade: TCC FORT WORTH SOUTH THE CREDITOR ON THIS ACCOUNT IS CURRENTLY REPORTING A $0 BALANCE.

(Pl.'s App. at Ex. D.)  Davidson interprets this report as follows:

> This Response demonstrates that Equifax did not treat the dispute as frivolous and, in fact, determined that the previous balance reporting was inaccurate and should not have been reported at all. Evidently, Equifax recognized that the

---

[8] The Court notes that it is questionable whether Section 1681i(a) even applies to Davidson's second reinvestigation request as Davidson sent the request through the CFPB and did not notify Equifax, directly or indirectly through a reseller, as required by this Section. *See* 15 U.S.C. § 1681i(a)(1)(A); *Waller v. Experian Info. Sols., Inc.*, No. GLR-23-1960, 2024 WL 3555344, at *5 (D. Md. July 24, 2024) (stating that, since Plaintiff disputed the inaccuracy through the CFPB and did not notify Experian directly or indirectly through a reseller, Experian did not violate the time requirements of Section 1681i(a) in handling Plaintiff's dispute). However, for purpose of Equifax's motion, the Court will assume Section 1681i(a) is applicable.

account should not have been reporting a balance, which is why they stated its now reporting a $0 balance.

(Pl.'s Br. at 7.)

In other words, Davidson appears to be claiming that it was inaccurate for Equifax to continue to list the debt on Davidson's credit report after stating, based on its second reinvestigation, that Texan Credit was currently reporting a $0 balance on the account. The Court believes that Davidson's claim stems from a misunderstanding of the term "charge off." On all credit reports submitted by Davidson, the reports indicate that the Texan Credit account is a "Charged Off Account." (*See, e.g.*, Pl.'s App. at Exs. C & E.) The court, in *Artemov v. TransUnion, LLC*, No. 20-cv-1892 (BMC), 2020 WL 5211068, at *3-4 (E.D.N.Y. Sept. 1, 2020), provides a succinct explanation of what this means, stating:

> A charge off, as defined in Black's Law Dictionary, is "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." It qualifies as a delinquency.
>
> One Court has explained that charging off a debt "is a business practice where a creditor writes off a debt and no longer considers the account balance an asset for accounting purposes." Banks are in fact required under Federal Regulations to charge off debt that is past due by over 180 days. Otherwise, their balance sheets would misleadingly reflect accounts as assets that have little chance of achieving their full valuation. Thus, the generally accepted accounting principle is codified into federal regulations adopted by the Federal Reserve Board and the Office of the Comptroller of Currency. Because it is not a voluntary act, the creditor has no choice in the matter.
>
> Creditors also have a financial incentive to charge off bad debt. By charging off a debt, a creditor is afforded some tax benefits since the amount constitutes a "bad loss deduction against then current profits." . . .
>
> Since financial institutions are required to comply with this federal requirement, it follows that charging off an account does not equate to debt forgiveness. Any other conclusion would be illogical; it would simply encourage a consumer to take out massive amounts of debt and wait around six months for it to be wiped away. Thus, the act "does not diminish the legal right of the original creditor to collect the full amount of the debt." Creditors, for example, could attempt to collect the debt themselves—either by utilizing internal collections staff

> or by contracting with a third-party agent willing to collect the debt on their behalf. Alternatively, they could sell the debt to a third-party purchaser at a discounted price based on the reduced likelihood of collection.
>
> . . .
>
> Lastly, a charge off is "one of the most adverse factors that can be listed on a credit report." In fact, according to Experian's website, a charge off is "considered a derogatory entry in your credit file—a serious negative event—and it can adversely affect your credit scores and your ability [to] borrow additional funds.

*Artemov*, 2020 WL 5211068, at *3-4 (E.D.N.Y. Sept. 1, 2020) (internal citations and footnotes omitted) (alterations in original); *see also Thomas v. World Finance*, No. 1:23-CV-00109-ADA, 2023 WL 4375499, at *3 (W.D. Tex. July 6, 2023) ("A charge off is an internal accounting matter that has no legal significance with request to the collectability of a debt.") (internal quotation marks omitted); *Lieberman v. Am. Express Co.*, No. 19-cv-6989, 2020 WL 5517271, at *4 (E.D.N.Y. Sept. 14, 2020) (finding a credit entry reporting a non-zero past due balance while reporting that the account had been charged off was not inaccurate or misleading). Thus, "[h]aving laid this foundation, it should be obvious that, even though [Texan Credit (and, in turn, Equifax,] labeled [Davidson's] account[ ] as charged off, [Equifax] had no obligation to zero out the overall or past due balance." *Artemov*, 2020 WL 5211068, at *4. Thus, because Davidson has failed to allege an inaccuracy in her credit report, she has failed to state a claim against Equifax under either Sections 1681e(b) or 1681i. As a result, the Court **FINDS** and **CONCLUDES** that Equifax's motion to dismiss should be **GRANTED**. [9]

---

[9] As to Davidson's claim that Equifax violated 15 U.S.C. §1681i(c) by failing to include a written statement of her dispute on her credit report, the Court notes that the "statement of dispute must be filed after the completion of the reinvestigation" and does not have to be included if there are reasonable grounds to believe that the statement of dispute is frivolous or irrelevant. *Akins v. Valley Proteins, Inc.*, No. 2:21-CV-193-Z, 2022 WL 2292729, at *8 (N.D. Tex. June 23, 2022); *see* 15 U.S.C. §§ 1681i(b), (c). "However, simply alerting a CRA that one disputes something on one's credit statement and requesting that a CRA investigate . . . is not the same as providing a formal statement detailing one's version of the dispute be included in that report." *Estrada v. Experian Info. Sols., Inc.*, 670 F. Supp. 3d 412, 423 (W.D. Tex. 2023). In this case, Plaintiff does not allege that, after a reinvestigation, she filed a **formal**

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Defendant Equifax's Amended Motion to Dismiss Plaintiff's Second Amended Complaint [doc. 59] be **GRANTED** and that all Davidson's claims against Equifax be **DISMISSED**.

**NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS, AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 28, 2025**, to serve and file written objections to the United States Magistrate Judge's proposed

---

**statement of dispute**. Instead, Plaintiff alleges that Equifax failed to include the required dispute notation after receiving multiple disputes relating to the accuracy of the Texan Credit tradeline from Plaintiff, including comments with her disputes that the account was in litigation. (*See*, *e.g.*, Pl.'s Sec. Am. Compl. at 6; Pl.'s Br. at 8.) Consequently, the Court finds and concludes that Plaintiff has failed to state a claim under 15 U.S.C. §1681i(c).

findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed, and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 14, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE